**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

TOMMI R. BATLEY,                    :

      Plaintiff,              :

vs.                                :     CA 17-0112-CG-MU

BISHOP STATE COMMUNITY             :
COLLEGE, et al.,
                                   :
      Defendants.

## REPORT AND RECOMMENDATION

This action is before the undersigned for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on the motion to dismiss or, in the alternative, motion for a more definite statement (Doc. 8) filed by Bishop State Community College ("Bishop State") and the Alabama Community College System ("ACCS"), Plaintiff's motion for leave to amend complaint (Doc. 24), and the Defendants' response to Plaintiff's motion for leave to amend complaint (Doc. 26). Upon consideration of all relevant pleadings in this case, and the attachments thereto, the undersigned recommends that the Court **GRANT IN PART** and **DENY IN PART** Plaintiff's motion for leave to amend complaint (Doc. 24) and **GRANT** the Defendants' motion to dismiss (Doc. 8).

## FACTUAL BACKGROUND

The *pro se* plaintiff, Tommi R. Batley, filed her Title VII race discrimination and retaliation complaint in this Court on March 10, 2017. (Doc. 1.) Batley, a white female, is a fulltime, tenured employee at Bishop State Community College in Mobile, Alabama,

having been employed as an English instructor for over ten (10) years. (*Id.* at 1; *see also* Doc. 1, Attached Charge of Discrimination ("I was hired by the Respondent in August 2006 as an English Instructor.")). Given that Batley references the Charge of Discrimination she filed with the Equal Employment Opportunity Commission ("EEOC") on November 29, 2016 early in her complaint (*see* Doc. 1, at 2), the undersigned notes that the Plaintiff alleged on the charge form discrimination based on race and retaliation that took place on, or around, August 1, 2016 (Doc. 1, Charge of Discrimination), more specifically:

> In or around August 01, 2016, I was subjected to disparate terms and conditions of employment by Roxanne Hannon-Odom (Department Chair, Black) because of my race (White), and in retaliation for complaining about different treatment.
>
> The disparate terms and conditions included, but were not limited to, unequal class schedules and class assignments. Hannon-Odom assigned me two different courses scheduled at the same exact time, and assigned me Friday eight a.m. classes every semester. Patty Crockett (English Instructor, Black) was never assigned Friday eight a.m. classes, or two simultaneous different classes. I informed the Respondent of the disparate treatment; however, no action was taken to correct the disparity.
>
> I was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*)

The facts contained in Plaintiff's complaint, which was timely filed within 90 days of her receipt of notice of the EEOC's December 12, 2016 Dismissal and Notice of Rights (*compare* Doc. 1 *with id.,* Attached Dismissal and Notice of Rights),[1] are much more expansive than the facts underlying her charge (*see* Doc. 1, at 2-3).

---

[1] That form contains the following determination by the EEOC: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the (Continued)

1.      Plaintiff filed an EEOC Charge against the Defendant in November 2016 alleging race discrimination and retaliation based on previous complaints of unequal treatment. The Charge alleged that the Plaintiff had been the victim of disparate and unfair treatment by the Defendant based on the assignment of Summer employment contracts,[2] among other things, which resulted in loss of income to Plaintiff due to Defendants' failure to offer Summer contracts to all fulltime, tenured instructors in her division without bias or prejudice. Summer employment contracts, along with additional income and benefits, were made available to Black female instructors in the same division who were less qualified than the Plaintiff who requested and was denied the same opportunities.

2.      Following the Plaintiff filing a Complaint with the EEOC in November 2016, Defendant retaliated against her by denying her promotion to Department Chair. After [the] Department Chair, Roxanne Hannon-Odom, retired in December 2016, the Academic Dean, Latitia McCane, chose to "eliminate" the Department Chair position by merging Plaintiff's department with another department at Bishop to avoid promoting Plaintiff to the position of Department Chair. As a result of Defendant's action, Plaintiff was denied the opportunity to advance to a leadership role at Bishop State[,] which further resulted in a loss of additional income as well as preferential teaching assignments and work schedule as Department Chair. Merging the two (2) departments was an intentional act to serve as a guise for Defendant's discrimination and retaliation against Plaintiff for filing an EEOC complaint against Bishop State.

3.      Also noted in the EEOC charge, in addition to the aforementioned, the Plaintiff also experienced discrimination by the Defendant in regard to her class assignments and work schedule; Plaintiff was the only instructor in her division who was forced to teach on Fridays as well as teach 8:00AM classes. No other Black female instructors in her Department were required to work on Friday or assigned 8:00AM classes. Black female instructors are afforded more desirable and preferential teaching schedules.

(*Id.* (footnote added)).

_____

statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." (*Id.*)

[2]      Bishop State's Summer Term 2016 began on May 16, 2016 and ended on July 29, 2016 (*see* Doc. 8, Exhibit A), two days before the date identified in Plaintiff's EEOC Charge of Discrimination (*compare id. with* Doc. 1, Charge of Discrimination).

In her motion for leave to amend her complaint (Doc. 24), Batley states that with her proposed amendment, she seeks "to provide a more definitive statement of her allegations that will refute Defendants' arguments for dismissal as well as satisfy requests for clarification or additional factual detail." (*Id.* at ¶ 2.) Far from remedying the deficiencies in her initial complaint,[3] Plaintiff's proposed amendment simply serves to underscore the soundness of the grounds upon which the Defendants seek dismissal of Batley's complaint with respect to her Title VII claims (*see* Doc. 8; *compare id. with* Doc. 24 & Attachments to Doc. 24). This is because Batley's purported amendment focuses upon the Defendants' alleged failure to treat her in the same manner as her black female colleague with respect to the assignment of summer classes during the 2016 summer semester (*see* Doc. 24, Exhibit AA, Revised Complaint, at 1 & ¶¶ 9-20)[4] and

---

[3]    Batley attempts to make much of the fact that she brought more information to the attention of EEOC than is referenced in the EEOC charge and that the charge does not focus on her penultimate claim of unequal treatment with respect to summer semester 2016 class assignments (*see* Doc. 24, Exhibit AA, at 1 & 5-10); however, it is apparent to the undersigned that the evidence she presented to the EEOC only serves to support that agency's assessment that any incidents she considered discriminatory that occurred more than 180 days from the date of the charge (that is, November 29, 2016) would be considered untimely (*see id.,* Attachments). In addition, the documents Batley has attached to her revised complaint indicate, from the EEOC's perspective, that Plaintiff did "not wish to include non-selection for summer assignments . . . in her charge of discrimination." (Doc. 24, Exhibit C.)

[4]    The factual allegations undergirding Batley's revised complaint read, in relevant part, as follows:

> 11.    During the EEOC intake interview [on November 29, 2016], Batley was required to cite at least one specific event or incident in which she felt she was the victim of racial discrimination or retaliation within the past 180 days. The intake interviewer placed particular emphasis on an event that resulted in some form of adverse action, or loss, to Batley. When Batley explained that all of the events had an adverse effect of her, the interviewer dismissed her response and explained that a monetary loss, in some way, was the only type of adverse action that was recognized or investigated by the EEOC.

> 12.    Batley explained that as a result of being denied the same summer employment opportunities as her Black female coworker had been given

(Continued)

during the summer semester of 2016, she had suffered a loss of income of more than $10,000.00 that she would have received if she had been given the same opportunity to teach the same number of classes as her Black female coworker. Batley was not given any classes while her Black female coworker was assigned two (2) classes to teach during the summer of 2016 (Exhibit E). The EEOC complaint broadly states that Batley complained of "unequal teaching assignments . . ." but no mention was made of the monetary loss or impact that these vaguely worded "unequal teaching assignments" caused Batley (Exhibit A).

13.     Although a cursory glance at the dates on the college calendar (Exhibit F) may suggest Batley's complaint of unequal teaching assignments during the summer 2016 semester may be untimely, the facts and circumstances surrounding the nature of how classes are determined, or "standard operating procedure", makes the college calendar an unreliable source for determining timeliness in this particular case. Standard operating procedure is that the schedule is not finalized until after registration is complete (Exhibit G), and sometimes, it changes even later than that if the decision makers and policy makers choose to change it (Exhibit H).

14.     Batley's used her summer 2015 teaching assignment as an example of the college's "standard operating procedure" to explain the unpredictable nuances of class scheduling. Batley's 2015 summer schedule was changed at the end of May after Batley had already met classes for 2 weeks. A class was taken away from Batley by her Division chair who taught the class instead of Batley. The division chair explained in an email to Batley that she was required to teach 3 classes as division chair and was given the directive by Dean McCane to specifically take one of Batley's classes since one of the division chair's classes had to be cancelled due to low enrollment (Exhibit H). Batley's Black female coworker in the same division was allowed to teach two (2) classes during the summer 2015 semester even though she has fewer overall qualifications and total years of teaching experience.

15.     Furthermore, it is also "standard operating procedure" that instructors make their requests for summer employment to the Division Chairs who make the class assignments. Before the end of Spring 2016 semester [that is, on May 6, 2016], Batley made the request to her division chair, Hannon-Odom, that she would like to teach during the summer 2016 semester if anything was available to which her chair replied that enrollment was low but she would let her know (Exhibit I). Batley never heard anything further from her Division chair and was not offered the same summer employment opportunities as her Black Coworker.

16.     Batley wrote a letter to the Vice President of Operations, Ann Clanton, whom Batley had already met and spoken with about feeling that she was being discriminated against because of her race and how she was not treated equally in the past in regard to summer employment. In her letter, Batley complained about being denied equal summer employment opportunities again for the summer 2016 semester. Batley stated in her letter [dated May 20, 2016]

(Continued)

does not remedy Plaintiff's failure to file her EEOC complaint within 180 days of that

purported unequal treatment. Just as important, Plaintiff's purported amendment does

not in any manner flesh out her Title VII claim of retaliation by identifying exactly when

she made her complaints to her employer (and/or supervisors) about unlawful racial

discrimination and what exact actions were taken (and when those actions were taken)

in retaliation for her complaints of unlawful racial discrimination. (*See id.* at ¶¶ 29-34.)

While recognizing that Plaintiff's amendment, as presented herein, would be

futile with respect to her Title VII claims against the moving Defendants, that is, Bishop

---

that her Black female coworker was listed on the schedule at the beginning of the semester and was teaching two (2) classes while Batley was not listed to teach any classes (Exhibit J).

17. Dean McCane later [on May 24, 2016] offered Batley one class to teach after Batley complained to Clanton (Exhibit K). However, McCane did not offer the class to Batley until after the semester had already started and classes were already meeting. Because Batley assumed she would not be given any classes since the schedule appeared to be finalized and it was nearing the end of May, Batley had made other commitments during the time that Dean McCane was now offering the class. Batley informed Dean McCane of the conflict with the time [by email dated May 27, 2016] in hopes that Dean McCane would assign her a class at a different time that would not conflict with her new commitments (Exhibit L). However, an alternative class was never offered to Batley even though other classes were available that could have been offered to Batley that would not conflict with her recent prior commitments (Exhibit G). Instead, the Dean responded [on May 31, 2016] by sending Batley a vague two word response with no further explanation (Exhibit M) from which Batley was left to ascertain for herself and infer (based on the lack of any further response from anyone after that regarding summer 2016 classes) at that point that she was not going to be given the same opportunity for summer employment as her Black female coworker was given; in fact, Batley was not even going to be given half of the teaching load that her Black female coworker was given (Exhibit J).

18. As a result of being denied the same opportunity for summer 2016 employment as was given to her Black[] female coworker, Batley suffered a loss of income of more than $10,000.00 that she would have received if she had been given the same number of classes to teach during the summer 2016 semester.

(Doc. 24, Exhibit AA, Revised Complaint, at ¶¶ 11-18.)

State and ACCS, that amendment also seeks to add four individual defendants in their official and individual capacities (namely, Acting Chancellor Jimmy Baker, Interim President Reginald Sykes, Academic Dean Latitia McCane, and former Chairperson for the Division of Developmental Education Roxanne Hannon-Odom) and add claims under 42 U.S.C. §§ 1981 and 1983,[5] as well as the Fourteenth Amendment to the United States Constitution, against those individually-named defendants, as well as Bishop State and ACCS. And while Bishop State and ACCS make an attempt to support a request that this Court deny Batley's motion to amend her complaint as futile to the extent it alleges claims barred by the Eleventh Amendment and seeks to assert claims against Acting Chancellor Jimmy Baker that have no basis in her factual allegations (*see* Doc. 26, at 3-5), they also acknowledge that "[t]he arguments related to the new claims and new parties may be more appropriately held over for briefing after some portion of the amended pleading is accepted by the Court and the newly-named defendants have been served." (*Id.* at 3 n.2.) The undersigned need agree with the Defendants' parenthetical assessment (*see id.*), particularly since Bishop State and ACCS make no argument with respect to Plaintiff's request to assert 42 U.S.C. §§ 1981 and 1983 claims (as well as Fourteenth Amendment claims) and seek damages against Sykes, McCane, and Hannon-Odom in their individual capacities (*see* Doc. 26, at 3-5) and because Plaintiff has not had the opportunity to respond to those arguments the Defendants have set forth in their response (*compare id. with* Doc. 25 (simply according

---

[5]     Plaintiff also mentions a non-existent section of Title 42, that is, 1998 (*see* Doc. 24, Exhibit AA, Revised Complaint, at 1), with respect to which this report and recommendation will not make future reference. Suffice it to say that any mention of "1998" should be **STRICKEN** from any amendment allowed by the Court.

Defendants the opportunity to file a response to Plaintiff's motion not later than July 14, 2017)). Allowing Plaintiff to amend her complaint to add the individually-named defendants and assert claims (against all defendants) pursuant to 42 U.S.C. §§ 1981 and 1983, as well as the Fourteenth Amendment, to be followed by service of the amended complaint, motion practice, and full briefing of the issues raised in any motions filed, is preferable to any piecemeal adjudication of arguable futility for which Plaintiff has been extended no opportunity to respond or correct.[6]

## CONCLUSIONS OF LAW

A.      **Motion to Amend**.

Plaintiff now seeks leave of court to file an amended complaint (Doc. 24 & Attachments). Under Rule 15, leave should be given "when justice so requires[,]" FED.R.CIV.P. 15(a)(2), but such leave "is not automatic." *Girard v. Aztec RV Resort, Inc.*, 2011 WL 7962612, *5 (S.D. Fla. Oct. 4, 2011) (citations omitted).  As this Court has noted,

> [t]he law of this Circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004); *see also Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1292 n.6 (11th Cir. 2007) (same). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir.1999). The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied. *See, e.g., Burger King Corp.*

---

[6]      Of course, Batley was extended the opportunity to seek to amend her Title VII claims, or otherwise establish why the Defendants' motion to dismiss should not be granted; therefore, this Court is not forestalled from finding that her suggested revised amendment of her Title VII claims would be futile and should be disallowed.

> *v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (denial of leave to
> amend justified by futility when "complaint as amended is still subject to
> dismissal"); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d
> 1514, 1520 (11th Cir.1996) (amendment is futile if cause of action
> asserted therein could not withstand motion to dismiss); *Amick v. BM &
> KM, Inc.*, 275 F.Supp.2d 1378, 1381 (N.D. Ga. 2003) ("In the Eleventh
> Circuit, a proposed amendment is futile when the allegations of the
> proffered complaint would be unable to withstand a motion to dismiss.").

*Bill Salter Advertising, Inc. v. City of Brewton*, Ala., 2007 WL 2409819, *2 (S.D. Ala. Aug. 23, 2007); *see also Hearn v. International Business Machines,* 588 Fed.Appx. 954, 958 (11th Cir. Oct. 23, 2014) ("Though a party ordinarily must be given at least one opportunity to amend [his] complaint, the district court 'need not "allow an amendment . . . where amendment would be futile."' . . . A proposed amendment is futile 'when the complaint as amended would still be properly dismissed.'"); *Christman v. Walsh*, 416 Fed.Appx. 841, 844 (11th Cir. Mar. 2, 2011) (per curiam) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."), *cert. denied,* 565 U.S. 910, 132 S.Ct. 319, 181 L.Ed.2d 197 (2011). As explained more fully below, the factual allegations against the named defendants in the proposed amended complaint (Doc. 24, Exhibit AA) would not survive a challenge under Rule 12(b)(6), with respect to her Title VII claims; therefore, the undersigned **RECOMMENDS** that the *pro se* plaintiff's motion for leave to file amended complaint (Doc. 24) be **DENIED as futile** with respect to those Title VII claims. In fairness to Plaintiff, however, the undersigned, as referenced above, **RECOMMENDS** that the Court allow the amendment, with respect to Batley's requests to add four defendants in their official and

individual capacities and assert claims pursuant to 42 U.S.C. §§ 1981 and 1983, as well as the Fourteenth Amendment.[7]

### B. <u>Pleading Standard</u>.

The sufficiency of Plaintiff's claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly*.").

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P 8(a) "something beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted;

---

[7] In addition, as explained *infra*, Plaintiff should be granted leave to assert a "class schedule" retaliation claim, in accordance with the antiretaliation provision of Title VII, should she desire to assert such a claim.

citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* ___U.S.___, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id.* at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." *ABB Turbo Sys. AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery imposes several costs on the litigant from whom discovery is sought[]" and "discovery

imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted).  Consequently, "where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly/Iqbal* pleading standard into a functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck*

*Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

1.    **Summer 2016 Employment**.    The parties agree that the EEOC charge does not encompass the allegation that the Defendants discriminated against Batley by failing to offer her a summer 2016 contract/classes/employment (*compare* Doc. 8, at 3 *with* Doc. 24, Exhibit AA & Exhibit A); however, Batley offers to explain in her revised complaint that she informed the EEOC intake interviewer, on November 29, 2016, about the denial of the same summer employment opportunities as her black female coworker during the summer 2016 semester and, further, that this issue is the lynchpin of her claim of racial discrimination under Title VII (*see* Doc. 24, Exhibit AA, at 5-8). Even accepting Batley's explanation, however, only allows Plaintiff to possibly overcome one of two hurdles placed in her path, that is, the hurdle that this claim does not fall within the scope of her EEOC charge.[8] *See, e.g., Brown v. Mobile County Commissioners,* 2015 WL 1444965, *4 (S.D. Ala. Mar. 30, 2015) (dismissing failure to promote and hostile work environment claims because they did not "fall within 'the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" (quoting *Gregory v. Georgia Dep't of Human Resources,* 355

---

[8]    Plaintiff's explanation in this regard is inconsistent with a statement attributed to her during the intake interview on November 29, 2016, namely, that she did "not wish to include non-selection for summer assignments, or rejected travel requests in her charge of discrimination." (Doc. 24, Exhibit C.) It being clear, from the EEOC's perspective, that Batley did not intend the summer employment issue to be included in her charge of discrimination, this Court could reasonably conclude that this claim does not fall within the scope of her EEOC charge and should be dismissed based on a failure to exhaust administrative remedies.

F.3d 1277, 1280 (11th Cir. 2004)). Batley's explanation and proffered revised complaint simply cannot and does not scale the timeliness requirement. In other words, as noted by the Defendants, even crediting Batley's explanation that the summer 2016 employment issue was raised in internal communications but not included in the formal charge, it is still time-barred.

As explained by the Eleventh Circuit, "[i]n order to litigate a claim for discrimination under Title VII, . . . a plaintiff must first exhaust administrative remedies, beginning with the filing of a charge of discrimination with the EEOC." *Rizo v. Alabama Dep't of Human Resources,* 228 Fed.Appx. 832, 835 (11th Cir. Jan. 31, 2007), citing *Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1317 (11th Cir. 2001).

> In a non-deferral state, such as Alabama, a plaintiff must file an employment discrimination charge with the EEOC within 180 days after the date of the alleged discrimination. 29 C.F.R. § 1626.7(a)[;] *Hipp v. Liberty National Life Ins. Co.,* 252 F.3d 1208, 12[13] n.2, 1220 (11th Cir. 2001). Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge. *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1332 (11th Cir. 2000).

*Id.; see also Carter v. University of South Alabama Children's & Women's Hosp.,* 510 F.Supp.2d 596, 606 (S.D. Ala. 2007) ("In a non-deferral state such as Alabama, the deadline for filing [an EEOC charge] is 180 days after the alleged discriminatory act."). Here, as the Defendants correctly observe, the allegations of Batley's revised complaint and the documents attached thereto demonstrate that the EEOC charge was filed more than 180 days after the decision regarding summer employment was made. (*See* Doc. 26, at 2.)

> As Batley alleges, Dr. Latitia McCane offered [her] one summer class to teach by way of memorandum dated May 24, 2016. (Doc. 24-1, ¶ 17; Doc.

> 24-1, p.36.)[9] Batley responded to Dr. McCane on May 27, 2016, declining the summer employment opportunity. (Doc. 24, ¶ 17; Doc. 24-1, pp. 37-38.) Batley alleges that she hoped Dr. McCane would then assign her a class at a different time, but Dr. McCane instead responded on May 31, 2016 with a vague two-word response, from which Batley inferred that she would not be granted summer employment. (Doc. 24, ¶ 17; Doc. 24-1, p.41.)

(*Id.* (footnote added)).[10] Because the last adverse employment action taken by the Defendants regarding summer 2016 employment, by Plaintiff's own admission, occurred not later than May 31, 2016, to be timely her charge of discrimination was required to be filed not later than 180 days thereafter, that is, on or before November 27, 2016. Batley's charge of discrimination, of course, was not filed until November 29, 2016; therefore, to the extent her summer 2016 employment claim can be read as falling within the scope of her EEOC charge, that claim remains time-barred by two days and should be dismissed. *Compare Rizo, supra,* 228 Fed.Appx. at 835 ("Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge.") *with Smiley v. Alabama Dep't of Transp.,* 778 F.Supp.2d 1283, 1293 (M.D. Ala. 2011) ("[I]f a plaintiff fails to file an EEOC charge before the 180-day limitations period [expires], the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies.").

## 2. Batley's Claim of Retaliation Related to the Division Chair Position in December 2016.
In her complaint filed in this Court on March 10, 2017,

---

[9] This offer, of course, came after Batley complained about not being on the summer 2016 semester schedule. Plaintiff knew she was not on the schedule not later than May 20, 2016. (*See* Doc. 24, Exhibit J.)

[10] The undersigned has utilized the Defendants' recitation because it "squares" with the undersigned's reading of Plaintiff's revised complaint and supporting documents.

Batley unequivocally stated that following the filing of her charge of discrimination with the EEOC, she was retaliated against by being denied a promotion to Department Chair in December of 2016. (*See* Doc. 1, at ¶ 2 & ¶¶ 9-13.) Her proposed revised complaint (Doc. 24, Exhibit AA) contains no mention of this specifically-identified and described instance of retaliation (*see id.,* at 1-13), which the undersigned appreciates as acknowledgement that this claim should be dismissed as requested by the Defendants (*compare id. with* Doc. 8, at 5-7). Nevertheless, to the extent it is necessary for the Court to consider this claim in more depth, the undersigned recommends the dismissal of this retaliation claim because Batley did not file a new or amended EEOC charge on the basis of this alleged retaliation, even though she certainly had the opportunity to do so since she did not file her complaint in this Court until March 10, 2017 (*see* Doc. 1), and it is clear in this Circuit that "*Baker* and *Gupta* do not apply where the retaliatory action occurs after the filing of the first EEOC charge but long before the filing of the lawsuit to give the plaintiff an opportunity to amend or to file a new EEOC charge to add a retaliation claim." *Robinson v. Koch Foods of Alabama,* 2014 WL 4472611, *2 (M.D. Ala. Sept. 11, 2014), citing *Duble v. FedEx Ground Package Sys., Inc.,* 572 Fed.Appx. 889, 892-93 (11th Cir. Jul. 24, 2014) ("It is unnecessary for a plaintiff to exhaust administrative remedies prior to filing a judicial claim of retaliation if that claim grew 'out of an earlier charge,' because [] 'the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.' . . . This exception, however, does not apply[] when no other properly raised judicial claim exists to which the retaliation claim may attach."); *see also, e.g., Caldwell v. State of Alabama Dep't of Corrections,* 2016 WL 3647976, *2 (M.D. Ala. Jul. 7, 2016)

(dismissing retaliation claim that occurred after Plaintiff filed her EEOC charge but before she filed suit); *Jones v. Heritage-Crystal Clean, LLC,* 2016 WL 3406514, *3-4 (M.D. Fla. Jun. 21, 2016) (applying *Duble* and dismissing retaliation claim that plaintiff did not assert in an EEOC charge).

That this retaliation claim needs to be dismissed, however, does not finish the inquiry because Plaintiff suggests in her original complaint that the Defendants retaliated against her for her complaints of racial discrimination by scheduling her to teach Friday and 8:00 a.m. classes, when no Black female instructors in her Department were required to work on Fridays or assigned 8:00 a.m. classes. (*Compare* Doc. 1, at 5, ¶ 10 ("The actions of Defendants . . . were done in retaliation for Plaintiff's complaints of race discrimination as specified in paragraphs two (2) and three (3) above and her attempts to assert her lawfully protected federal civil rights.") *with id.* at ¶ 3 (Batley's complaints about being the only instructor in her division required to work on Fridays and teach 8:00 a.m. classes)); *see* Doc. 1, Charge of Discrimination (checking both the race discrimination and retaliation boxes and explaining that she was subjected to disparate terms and conditions of employment, on or around August 1, 2016, in retaliation for complaining about different treatment, such disparate terms and conditions including unequal class schedules and class assignments)).[11] Plaintiff's proposed amendment, however, "backs away" from her original complaint, making no mention of being scheduled to teach Friday and 8:00 a.m. classes and, instead, focusing solely on the Defendants' alleged denial of summer 2016 employment. (*See*

---

[11]     Thus, the undersigned must necessarily disagree with the Defendants' assertion that "Batley d[id] not allege [in her complaint] that her class schedule was retaliatory[.]" (Doc. 8, at 8 n.4.)

Doc. 24, Exhibit AA.) At the same time, however, the revised complaint contains an extremely broad retaliation claim which appears to want to "capture" years of purported disparate treatment about which she allegedly complained to President Sykes in writing (and perhaps in person, as well as complaining to others in a supervisory capacity) and then invites this Court to ferret out the "retaliation" she experienced after complaining to Sykes and/or others in a supervisory capacity. (*See id.* at ¶¶ 9-10& ¶¶ 29-34.) The undersigned perceives only two possible retaliatory employment actions, *see, e.g., Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008) ("A *prima facie* case of retaliation under Title VII requires the plaintiff to show: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."), namely, the alleged denial of summer 2016 employment (*compare* Doc. 24, Exhibit AA, at ¶¶ 10-18 & ¶ 34 *with* Doc. 24, Exhibit E, at 2-3) and, although perhaps a stretch, the aforementioned alleged unequal class schedule (which required her to work every Friday and teach 8:00 a.m. classes) (*compare* Doc. 24, Exhibit AA, at ¶ 10 *with* Doc. 24, Exhibit E, at 4).

As previously found, Plaintiff's Title VII reverse race discrimination claim related to summer 2016 employment is untimely; therefore, to the extent she intends by her revised complaint to "rest" her retaliation claim on the denial of summer 2016 employment, her retaliation claim is also untimely. *Compare Rizo, supra,* 228 Fed.Appx. at 835 ("Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge.") *with National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 122 S.Ct. 2061, 2070-71, 153 L.Ed.2d 106 (2002) ("A discrete

retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."). Accordingly, with respect to such a retaliation claim, allowing the amendment would be futile. Moreover, to the extent Plaintiff's initial complaint (Doc. 1), and perhaps her revised complaint (*see* Doc. 24, Exhibit AA), can be read as attempting to allege that her class schedule was retaliatory, this claim must also necessarily be dismissed because neither complaint specifically alleges when, exactly, she complained to President Sykes (or others in a supervisory capacity), in writing or in person, about unlawful race discrimination, *see, e.g., Muhammad v. Audio Visual Servs. Group,* 380 Fed.Appx. 864, 872 (11th Cir. May 26, 2010) ("The opposition clause . . . protects activity that occurs before the filing of a formal charge with the EEOC, such as submitting an internal complaint of discrimination to an employer, or informally complaining of discrimination to a supervisor."), when (in relation to the foregoing complaint(s)) she received her class schedule,[12] and, importantly, neither complaint alleges that a reasonable employee would have found her class schedule (that is, Friday and 8:00 a.m. classes) such that it might well have dissuaded a reasonable worker from complaining about discrimination to her employer, *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006); *see id.* at 69, 126 S.Ct. at 2415-16 ("We phrase the standard in general terms because the significance of any given act of retaliation will often depend

---

[12]      Presumably, it would have been in the Fall of 2016, that is, either on August 1, 2016 or thereabouts; however, to the extent Plaintiff is again allowed to amend her complaint, this Court needs to know the exact timing of her class schedule relative to her internal complaints of race discrimination.

upon the particular circumstances. Context matters. 'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.' . . . A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. . . . A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."). Accordingly, while the Defendants' motion to dismiss this retaliation claim should be granted, based on the identified deficiencies in Plaintiff's initial complaint and her proposed revised complaint, the undersigned **RECOMMENDS** that the Court extend to Batley the opportunity to once again amend her complaint to state properly a "class schedule" retaliation claim under Title VII.

   **3.**   **<u>Whether Batley's Class Schedule Claim Constitutes an Adverse Employment Action</u>**. In her initial complaint, Batley alleged that she "experienced discrimination by the Defendant in regard to her class assignments and work schedule; Plaintiff was the only instructor in her division who was forced to teach on Fridays as well as teach 8:00AM classes. No other Black female instructors in her Department were required to work on Friday or assigned 8:00AM classes. Black female instructors are afforded more desirable and preferential teaching schedules." (Doc. 1, at 3.) And while her proposed amended complaint arguably makes no mention of discrimination with respect to class schedule (*see* Doc. 24, Exhibit AA, at 1-12), the

undersigned must necessarily rule on the Defendants' motion to dismiss Batley's claim of discrimination with respect to class schedule set forth in her initial complaint (*compare* Doc. 8, at 7-9 *with* Doc. 1), a claim that indisputably arises under Title VII's substantive antidiscrimination provision (*see id.*). *See* 42 U.S.C. § 2000e-2(a) (prohibiting employers from discriminating against their employees on the basis of race).

"To establish a prima facie case of Title VII discrimination, a plaintiff must show that '(1) [] she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated [black] employees more favorably; and (4) she was qualified for the job.'" *Foster v. Thomas County, Georgia,* 927 F.Supp.2d 1350, 1355 (M.D. Ga. 2013), quoting *McCann v. Tillman,* 526 F.3d 1370, 1373 (11th Cir. 2008); *see also Smith v. Sunbelt Rentals, Inc.,* 356 Fed.Appx. 272, 277 (11th Cir. Dec. 10, 2009) (setting forth the same standard in reverse race discrimination case alleging disparate treatment). The Eleventh Circuit has made clear that "[a]n adverse employment action is not only an element of the prima facie case, but an element of the claim itself." *McCone v. Pitney Bowes, Inc.,* 582 Fed.Appx. 798, 800 (11th Cir. Sept. 5, 2014), citing *Holland v. Gee,* 677 F.3d 1047, 1056 (11th Cir. 2012); *see also Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1246 (11th Cir. 2001) ("[A]dverse employment action is an indispensable element of a Title VII plaintiff's case[.]").

> An adverse employment action is "a serious and material change in the terms, conditions, or privileges of employment." Generally, an adverse employment action requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. The employee's subjective view of the significance and adversity of the employer's action is not controlling. Rather, the employment action

must be materially adverse as viewed by a reasonable person under the same circumstances.

"[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the work place. Indeed, Title VII was not designed to make federal courts second-guess the business judgment of employers. And because work assignment claims strike at the very heart of an employer's business judgment and expertise, absent unusual circumstances, they typically do not constitute adverse employment actions.

*McCone, supra,* 582 Fed.Appx. at 800 (internal citations omitted); *see also id.* at 801 (affirming district court's dismissal of gender discrimination claim for failure to allege any conduct that would qualify as an adverse employment action).

The undersigned is of the opinion that Batley's claim of being assigned Friday and 8 a.m. classes is clearly a work assignment claim, *see id.*, it being common knowledge that Friday and 8 a.m. classes are commonplace on college campuses and that professors have to teach those classes. All Batley has done is allege a subjective belief that Friday and 8 a.m. classes are less desirable (that is, they are not preferred) but has not alleged that those assignments resulted in a change in pay or benefits, differences in workload, or decreased employment opportunities (*see* Doc. 1, at 3). *See McCone, supra.* The undersigned, therefore, **RECOMMENDS** that the Court find that a reasonable person under the same circumstances as Batley would recognize that Friday and 8 a.m. classes are "commonplace and represent little more than the 'ordinary tribulations' of the work place." *McCone, supra,* citing *Davis, supra,* 245 F.3d at 1239 and *Cotton v. Cracker Barrel Old Country Store, Inc.,* 434 F,3d 1227, 1234 (11th Cir. 2006). Accordingly, because Batley did not allege in her initial complaint "an adverse employment, an indispensable element of an employment discrimination claim,

[s]he failed to assert a facially plausible claim that would allow [this C]ourt to draw the reasonable inference that [the Defendants were] liable for [reverse race] discrimination." *Id.* at 800-01, citing *Iqbal, supra,* 556 U.S. at 678, 129 S.Ct. at 1937 (other citation omitted). Defendants' motion to dismiss Batley's Title VII claim of discrimination with respect to her class schedule (*see generally* Doc. 8, at 7-9) is, therefore, due to be **GRANTED**.

## CONCLUSION

In light of the foregoing, the undersigned **RECOMMENDS** that the Defendants' motion to dismiss (Doc. 8) be **GRANTED** and that the claims raised in Plaintiff's complaint filed on March 10, 2017 (Doc. 1) be **DISMISSED** for the reasons stated herein (or based on the pleading deficiencies noted herein). In addition, it is further **RECOMMENDED** that Plaintiff's motion to amend the Title VII claims set forth in her complaint (Doc. 24) be **DENIED** as futile because her proposed revised amendment does not cure any of the deficiencies contained in her original complaint and, as amended, those claims are still properly **DISMISSED**. However, insofar as Plaintiff proposes to amend her complaint to add four individual defendants in their individual and official capacities and assert claims in accordance with 42 U.S.C. §§ 1981 and 1983, as well as the Fourteenth Amendment, the undersigned **RECOMMENDS** that Batley be allowed to amend her complaint accordingly. Finally, if Plaintiff is desirous of asserting a "class schedule" retaliation claim, in accordance with Title VII, she should be afforded that opportunity.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 14th day of August, 2017.

 s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**